Good morning. Do we have you here? I'm Michael Levinson here for the defendant. Christine Cook on behalf of the people. Okay, you are in front of the 1st District Appellate Court, 2nd Division today. The three judges you have are myself, Terry Lavin, and along with my colleagues, Justice Aurelia Puchinski and Justice Cynthia Cobbs. And the way we're handling oral arguments in this Zoom format is to give each side 10 minutes uninterrupted without any questions from us. And at the conclusion of that 10 minutes, you'll wrap up your arguments and then see if we have any questions. And the appellant should save some time, three to five minutes for rebuttal. So why don't we go ahead and start with the appellant here. Okay, thank you, Your Honor. May it please the court, Michael Levinson for the defendant, Romel Outlaw. Your Honor, over the course of what must have been a long minute and 22 seconds, Romel Outlaw and Myesha Everhart were confronted, intimidated, and then threatened by members of the Blackstone Nations gang. They tried to get away. But when one of the gang members, three of the gang members fanned out around them as they were leaving, and one of them urged, blow him away, blow him away. And then in apparent response, another reached into his waistband. At that point, the defendant pulled a weapon and discharged it in the direction of the three. This is a classic case of self-defense, but the trial court rejected the defendant's self-defense defense because he found that while Mr. Outlaw honestly believed that he faced grave harm or death, that that belief was unreasonable. Now, the state has the burden of proving beyond a reasonable doubt that that belief was unreasonable. And Judge Ford found that the state had. I think, however, that based on the facts which are essentially undisputed and essentially conceded by the state, both below and in their brief in this court, there is at least reasonable doubt about whether or not the defendant's belief was reasonable. To be clear, this has nothing to do with second guessing the trial court. The evidence was largely undisputed and much of it came from the state's own witnesses. It's undisputed that Mr. Outlaw and Ms. Everhart faced gangbangers when they came into the Fair Food Mart for the purpose of purchasing milk for their child. It is undisputed from the moment they approached the store, they were taunted by the gang members. They were followed into the store by one of them. He taunted them in the store. He got in their face. He used gang language and signs. He raised questions about where are you from? Why are you here? You're in our territory. Things of that nature. He made a quick purchase, the defendant did, and he and Maisha Everhart then left the store, tried to get away. At no point during this episode was he an aggressor of any kind. He happened on to the situation where he was confronted, intimidated, and threatened. And as he and Maisha were walking out the store, they continued to be intimidated. Everyone in the store, the gangbangers were both down the street and in the store, followed them out. Three of them fanned out as they walked across the street. Maisha and the defendant, Romel, got to a vacant lot across the street. And that's where it occurred, where one of the gangbangers was waving at them and urging, blow him away, blow him away. And another then reaches into his waistband. And what's important to understand at this point, based on the facts, is Maisha Everhart testified about these facts, as well as Romel Outlaw at the trial court. And we went through Maisha's testimony in our brief. And what is evident is that she saw and heard the exact same things that Romel heard. And what she did, as soon as she heard the statement, blow him away, and saw another one reach into his waistband, she took off and ran. And she testified she did that because she was afraid she was about to be shot. And we think that that evidence is pretty strong evidence that not only corroborates the belief that the defendant had, but also at least creates some reasonable doubt as to the unreasonableness of the belief. In that situation, a situation which occurs over the span of, in total, a minute and 22 seconds since they both entered the store, and just 35 seconds after they left the store, the defendant was put under extreme pressure, making quick judgments, trying to extricate himself all along the way, never being the aggressor himself in any way, shape, or form. And it was only when he was confronted with the language, blow him away, by people he knew to be gangbangers who had already been intimidating him, and he sees someone else reach into his waistband, that he draws his own weapon. Now, the state and the trial court, you know, made the point, the state picks up on the trial court's rationale, that there was no gun found at the scene. And we go through some of the cases in our briefs, and I don't think it's, you know, important to go through the chapter verse of those cases now. But I want to bring out something that I think is a key concession by the state in their brief. The state says, and I quote, That's a significant concession, because what that says is that everything about the belief that the defendant had was reasonable, save for the absence of a gun. There can be a mistaken belief, and, you know, perhaps the defendant's belief that there was a gun was mistaken. But the fact of the matter is, the defendant did, in fact, hear someone say, someone who he knows to be a gangbanger who's been intimidating him, blow him away, and here's another, or he sees another person reach into a waistband as if to act in response to that. That is also confirmed by the testimony of Maisha Everhart. And we submit that that concession is a critical concession because the state is essentially conceding that the belief that Mr. Outlaw had was reasonable. Let me, I know my time is running out here. So let me just talk briefly about the sentencing issue. I just want to focus on the mitigation point. The trial court judge did refer to the fact that the conviction for second degree murder was mitigating, I think, were his words. And we don't necessarily expect the trial court to have engaged in some kind of monologue or soliloquy about what the effect of that mitigation was. But it's pretty apparent when you read the transcript that the trial court judge really only paid lip service to the circumstances that arose here. The judge himself, during the course of the trial, made some pretty significant findings about how the defendant and Maisha Everhart were intimidated and how he understood that he was, he thought he was under attack and was about to be under attack. But the judge didn't consider any of that in his in his sentencing, nor did he consider the fact that this is not a situation that the defendant created. This is not a situation where the defendant had some prior history with Mr. Simpson or with any of the other gang members members there. The defendant happened upon the situation, unfortunately, and was never the aggressor always tried to extricate himself and a sentence of 18 years under those circumstances without any real regard for the mitigation facts, we think is excessive and abusive discretion. I think I just conclude by saying in some, it was a tragic event that night. And it's a it's an event however that the record I think pretty clearly establishes the defendant did not create the defendant walked into the situation, literally, he was never the aggressor. This is unlike the typical self defense case where a defendant has some history with the victim. Here, the defendant had no history with the victim but he was put upon by the victim. The moment he showed up at the Fair Food Mart, and it just spiraled down from there. And with that, I will thank the panel and and prepared to answer any questions and we'll reserve some time for rebuttal. What is the standard under which we would that we would have to meet in order to overturn the trial judges verdict that your client was guilty. I think you would have to view the evidence in the light most favorable to the prosecution and see based on that view whether or not in that view, there still is any reasonable doubt. And our position is that when you view the light, when you view the evidence in the light most favorable to the prosecution. It's really the evidence in the light most favorable to the defense as well because the evidence is what it is on all of the major points, including the points that they were the three fanned out, one of them was waving. You know, it's it's undisputed that they were one of them was urging another to blow them away and it's undisputed that someone reached the waistband. And so when you view that evidence in in the light most favorable to the prosecution. And, you know, granted, you look at the absence of a gun, there was no gun found at the scene. You still view it in the, in the, in the light most favorable to the prosecution. And there's at least some doubt, and we think reasonable doubt that the defendant acted reasonably. Perhaps he could have and should have run away. But that doesn't exclude the possibility that in drawing his own weapon. When he thought he was about to be shot by a gang member. That doesn't exclude the possibility that his actions were unreasonable. And that's our position we understand the standard is a high one. But under the particular facts of this case, it's not again I don't think it's a matter of second guessing the trial court, it's a matter of really understanding what the facts show and the facts really do disclose reasonable doubt. But the buzzwords, just to pull them up is that we would have to find that the evidence is so improbable or an unsatisfactory that the court shouldn't have found him guilty, because he didn't have a reasonable fear that he was about to be harmed. Yes, and I would, I think, make the same point is, you know, characterizing the standard that way, doesn't really, in my view, change the view of the evidence because I would say that when you look at the fact that he was being that one member was urging another blow him away and another reaches into his waistband. I think that does show that does easily meet the standard. I mean, again, it's not saying that there was another course of action that could have happened, but it at least raises a question about the reasonableness of what the defendant did in this case. Well, obviously another course of action could have happened, the defendant could have done what his, is it girlfriend, fiance? His girlfriend and the mother of his child. Okay, right. You know, they had achieved enough distance that they were across the street from where all these other people were collected, right? I, that's what the trial judge said, but I think if you look at defendants Exhibit Two, you'll see exactly what the distance was. They had made some distance between them and the gangbangers, but it was a distance that still a bullet could easily have traveled and unfortunately did travel that distance. Well, nine of them flew. Okay. I think that, you know, I think what the trial court was looking at was a situation where nobody was running after them. There was not a gun. Nobody saw a gun. And they had achieved enough space that they could just run away. And the defendant's choice was quite the opposite. He didn't aim his gun and shoot at the person who was reaching into his pocket. He just started shooting at all of them and shot nine times and I think that's what the trial court was looking at here to determine whether or not his belief that he was about to be harmed in a serious way was reasonable. Well, I guess a couple things on the facts relating to that one is it's not at all evident and the trial court certainly didn't find it at least specifically that the action stopped that the gang, the three would find out had stopped moving and weren't coming after them. It got to the point where they were moving, and they had made it to halfway middle of the street. When the defendant and his girlfriend were in the middle of a lot next door that doesn't mean they weren't continuing to follow them. Number two, the fact that he shot nine times is I think, you know, goes back to the point that he was so stressed, he was making judgments at a time of heightened stress, and he didn't make a good judgment in that regard, but not making a good judgment is not the same thing as saying that his actions were unreasonable. And as far as making the choice about whether to run away or to discharge his weapon, I don't think the fact that he discharged his weapon as opposed to running away shows that his action was unreasonable or his fear was unreasonable. Again, he could have run away, but the fact that he didn't or if he did that doesn't negate the possibility or at least the reasonableness of someone taking a different action under the same circumstances. That's all the questions I have. He was afraid that he'd be shot in the back if he ran right. Yes, he said that he turned around, he testified, he turned around and was walking backwards at that point because he wanted to see what was happening, he was afraid he'd be shot. And they were still coming after him. Yes. And they were in the middle of the street, he was in the middle of the lot, so, you know, give or take, it's about, I don't even know how many feet that is, but we know from, as what you said, we know that a bullet could travel that far because his bullet traveled that far. Yes, and the Fence Exhibit 2 does depict the distance. And just to reiterate, both he and the woman testified that they saw a man, one of the Pistone guys reaching into his waistband, which would indicate to anybody that he might have a gun. Yes, and that happened right after the other one was yelling, blow him away, blow him away. Okay, thank you. Thank you. I have no questions. Okay, we'll hear from the State. May it please the Court, Counsel. Justice Levin, as you noted, the standard for review in this case, as defendant finally concedes, is the evidence taken in a light most favorable to the people. But in doing so, he again argues the facts in a light most favorable to him. The evidence of this trial clearly showed that the defendant had a very scary confrontation with a bunch of Black Pistones in a corner store. He and Myesha walked out of the store, and they walked across the street, and all of those men stayed there because that's where they were hanging out drinking and smoking. As a couple of men continued their oral threats, or whatever it was that those were, the defendant Myesha continued to make distance and continue to move away from these men. And contrary to Justice Puchinsky, your question, these men were not following the defendant and Myesha. They were staying at the corner as the store clerk had testified, and as the physical evidence showed. They were not pursuing the defendant and Myesha at all. And in fact, the nine casings were found in a lot in the middle between 203 and 207 West 69th Street, which is a pretty good distance from the store. So while the defendant certainly had a fear of what could have happened at the store, that fear should have passed because of threat. Any threat that could have been perceived had passed by that time. In self-defense cases, the defendant has a burden to prove each of the following elements that unlawful force was threatened against him. In this case, the defendant could not prove that. Oral threats about being a stranger in a corner store does not qualify as unlawful threat against a person. We do concede that the defendant was not the aggressor in this case. He was accosted in the store and outside of the store. The defendant did not establish that the danger of harm was imminent. Again, these were oral threats in the trial court in this findings of fact, made very specific findings of fact about, look, these were bad actors, no doubt about it. But that's where it ended. The oral threats and the puff going on at the store and outside of the store were just that. There was no danger of imminent harm. The defendant's use of force was not necessary. He couldn't establish that factor either. He did establish that he subjectively believed he was in danger, which required the use of force. However, those beliefs were objectively unreasonable. The trial court was not obligated to believe that defendant and Maisha's testimony that they both saw somebody reaching into his waistband was credible. And in fact, the only time we ever hear about that is at trial because the defendant and Maisha never went to the police. They never made a phone call. They fled. And in fact, the defendant hid his gun and fled, and then they both moved. Further evidence of guilt. It's only when the defendant meets all of those criteria that the burden then shifts to the people to prove beyond a reasonable doubt that the defendant did not act in self-defense. And because most of those factors were never met by the defendant, those self-defense claims failed as a matter of law. The people only need to negate one element in order to establish that the self-defense claim has failed. Here, the evidence clearly shows beyond a reasonable doubt that the defendant's belief that he was justified in the force he used was unreasonable. Not only did he make quite a distance by going through several lots on 69th Street and escaping these bad actors, as Judge Ford said, but then he fired nine shots. He didn't fire into the air to scare these people off. The evidence also shows and the videos apparently established that after the first bullet was fired, everybody scattered. And yet the defendant chose to unload his gun on a bunch of unarmed men who were jerks and aggressive, but unarmed. Under no fact, under no law, can a self-defense claim be made in this case. Defense counsel, again, argues the facts in a light most favorable to him when he characterizes the people as fanning out. They weren't fanning out to do anything to him. They were hanging out at the store smoking and drinking. We don't concede anything in our brief. We didn't concede anything at trial as the defense unfavorably claims. There is no reasonable doubt that the defendant's beliefs were unreasonable. Myesha did not corroborate defendant's unreasonable belief. They both merely state at trial that they thought somebody had a gun when in fact he did not. But as far as sentencing is concerned, the trial court did not just pay lip service to the fact that the defendant objectively believed he was acting in self-defense. Or I'm sorry, subjectively believed, but objectively that belief was unreasonable. The trial court made a comment about the fact that he had to find that factor in order to determine that this was a second degree murder conviction. The facts in this case are really clear, unlike most cases where we have, where this is really a solid second degree murder case. The defendant did go into the store with his girlfriend. They were verbally accosted. They were certainly in fear of what could have happened to them at that store. But once they left and once these bad actors allowed them to leave and they put all of this distance behind them, there was no objective belief that the use of force the defendant used was reasonable. For all of the reasons stated in our brief and all of the arguments today, the people respectfully request that this court affirm the second degree murder conviction and defendant's 18 year sentence, which was not an abuse of discretion. No questions for me and my colleagues. I have one question for Ms. Cook. Thank you. So at what point in the series of events does the test regarding the defendant's belief stop? You mentioned that he fled. Is that a part of the decision or the determination with respect to the defendant's belief? Well, the trial court didn't really make any findings about the defendant, Maisha's fleeing or secreting the weapon. The trial court's finding of facts were that once he, based on the evidence and the credibility of the witnesses and some of the videos and the trial testimony that once they had made their way across the lot, coupled with the fact that no gun was found, that the belief was no longer reasonable. So just to be clear, the test of the defendant's belief, reasonable or unreasonable, stops at the point in time the nine shots have been fired. Right? So it's not that he fled. It's no moment that he threw away the gun. It's no moment. Any of the things that happened after are not a part of the elements that need to be shown in order to support his theory of the case. Is that correct? No. No. I would say no, because the law is very clear that fleeing and secreting evidence are evidence of consciousness of guilt. Are they evidence of unreasonable belief? I think so in this case, sure. Do you have a case you can cite for that proposition? It's the standard case law is in our brief about consciousness of guilt, about fleeing the consciousness of guilt, the disposal of weapons, the destruction of evidence. Those cases are in our brief. But that still doesn't answer Justice Cobb's question. The consciousness of guilt after the fact has nothing to do with his reasonable belief in those one and a half minutes when he was confronted with men who were threatening to a man who threatened to blow him away and people who did apparently follow him, at least for some distance outside of the store. Well, no, they didn't follow the defendant outside the store. They left the store and were standing at that corner. They weren't following the defendant in my shop. And again, the whole notion that somebody was yelling, blow them away is only testified by defendant in my shop at trial. And again, taking the evidence in a light most favorable to the people that does not necessarily need to be believed. The trial court made no such factual assumptions that disregards the standard of review in this case. But it is our argument that the defendant's subsequent actions of fleeing, moving and destroying the weapon can in fact be considered as part of his unreasonable belief because he's trying to cover up the fact that he acted inappropriately. He acted on objectively. You made a point of saying he moved as evidence of guilt. Couldn't moving away also be evidence that he was afraid of these guys and continue to be in fear of them? Sure. But again, that's taking the evidence in a light most favorable to the defendant, which ignores the standard of review. I'm still trying to hone in on when his reasonable belief that he was in danger stopped and when your whole argument of evidence of guilt begins, because I think that you're combining them and putting them together. And I think that I'm having trouble with it. I think that it's two separate decisions that he's making. That may be true, and we may agree to disagree on that regard. I believe that this court could take defendant's subsequent actions as the law allows as consciousness of his guilt. But the issue is the reasonableness of his belief, not the consciousness of his guilt. Those are two separate issues that I believe, like Justice Pichinsky, you're conflating here. And you may believe that, but I believe that those subsequent actions are further evidence that his belief when he shot those nine times at unarmed men who were not pursuing them was unobjectively reasonable. And that's why he fled. And that's why he destroyed the gun. Well, I may believe it more if you cite me to a particular case. Well, again, I just have standard consciousness of guilt of destruction of evidence and fleeing that's in our brief. But that's a separate line of cases. We're talking about mitigating factors here. No, I understand. I understand. That is just to me a logical application of that rule of law to the facts in this case. Maybe his reasonable. Maybe his belief that he was in danger should have expired after he fired the first shot. Might be one look at him. Right, which would be a stronger argument in my. Well, then we can go with that. Didn't go with that in your brief. I mean, you've made. I think that that could be applied. His subsequent actions could be applied to his unreasonable belief at that time. I mean, the evidence here, I think, established and correct me if I'm wrong. You guys know the record better than I. That he didn't even shoot at the person. The first shot was not directed at the person that he believed was reaching for something out of his pocket. Right. So, you know, the reasonableness of whatever he's doing. You know, in my judgment, it could be, you know, right at that point in time. But instead of just taking the one shot, instead of aiming at the person who was allegedly reaching into his pocket, maybe for a gun, maybe for a cell phone, who knows. He went on to shoot across at a bunch of people firing 99 shots. Okay, let's hear rebuttal. Yes, thank you. A couple things on the facts and the record. The record is absolutely clear that three of the gang members did in fact follow the defendant and my issue. You can see it on the videotape. The testimony, including from the state's witness, Larry McGee and from Mr. Ahmed, the other state's witness confirms that three of the gang members follow them out. That's why they were in the middle of the street, not just hanging out by the store. Okay, so how far did they get, those people, and how far did the defendant and his girlfriend get? And there is no direct testimony on the actual distance in feet. But you can see from defendant's exhibit two, essentially, and the videotape, the three are in the middle of the street. And, you know, I could guess at the length of the street, you know, half a length of street distance and then in the lot that was adjacent to the street, my issue and the defendant were staying in the middle of that lot. So maybe it's 20 feet, maybe it's 25. You can look at the defendant's exhibit two and I think get a better idea of it. Defendant's exhibit two depicts someone standing in the middle of the street and has circles where the witnesses said the defendant and my issue were standing. So the idea that they stopped just isn't true. And this isn't a matter of looking at the evidence in the light most favorable to the state. That standard doesn't require that you actually ignore the evidence that you can see in front of your face. They were being followed by three of the gangbangers while several held back and stood outside the store. That's the first thing on the facts. The second thing is the nine shots. And what the testimony from the defendant was on that is that he fired in the direction of the three. He testified he wasn't aiming at any one of them in particular, but he fired in their direction. Did he kill that person? Was that person one of the three? Yes. In fact, the person I believe and it's not 100% clear from the record, but I believe the person is the one who was reaching into his waistband. He was the person on the defendant's right all the way on the right one Simpson. But the other important point here is that the defendant testified that these shots came in two to three seconds. So there isn't the kind of premeditation that I think you might ordinarily think about under these circumstances where he took a shot, spent some time, thought about it, took another one and did that nine times. Well, there may not be that, but there certainly could be a bit of an overreaction. There could have been an overreaction. And that's where I think both the trial judge and counsel are really imposing a standard that the law doesn't allow for determining whether or not there's reasonable doubt relating to a reasonable belief. And that is in the comfort and distance, both in miles and time of their law offices or the courtroom, they're essentially putting themselves in the position of what we would have done, what they would have done under the same circumstances. But that's not the standard. The standard recognizes that under the stress of an event where you fear for your life or the life of another, you are going to make decisions and you are going to make judgments that may not be the best. But that doesn't mean that they're unreasonable. It means that you didn't make the best decision, but it doesn't make the decision unreasonable. And then with respect to counsel's point that the judge did not have to believe the defendant in my issue ever hard on their testimony. To me, this is another example of, again, not looking at the evidence in the light most favorable to the state. They're trying to basically ignore the evidence saying, well, we can make the inference that the judge didn't believe their testimony and therefore their his belief was unreasonable. Well, that's an unreasonable. The judge certainly found that in his judgment, the defendant's conduct was unreasonable. His reaction was unreasonable. I mean, that's the essence of the case. It comes down to the sixth mitigating factor, and that was not established in the mind of the trial judge, who was given great discretion. And we have to say that no rational trier fact could ever come to the same conclusion. That's what the law is. That's what the standards are. And that is what I think is the fundamental issue that you're dealing with. Yeah, I don't disagree with how you characterize what the trial judge did, but the trial judge also did believe the defendant and Miss Everhart. He said so in the transcript. He said, I believe them. I credit their testimony. But there are two things, and you keep skipping the second. He did believe that they thought that they were in danger, and he did think that these people were acting inappropriately. And he did recognize that they were making threats, nebulous maybe threats, blow them away, whatever. But he didn't. The trial judge did not believe that the defendant's belief that he was in imminent danger and had to respond with deadly force was reasonable. That's what the court found. And in that regard, he did, to a certain extent, find that the defendant's position was not reasonable, was not credible. That's what the record is. Another way of saying it is that the judge found that there was no reasonable doubt that the defendant's belief was unreasonable. And I understand that he found himself sitting there that the belief was unreasonable. But to put it in the legal context, he found there was no reasonable doubt that it was unreasonable, and that's where he got it wrong. There's at least a reasonable doubt. When you take the facts and you view them most favorable to the state, there still is at least a doubt that he acted reasonably under those circumstances. I appreciate your passion and your commitment and want to go to the extent of saying thank you for representing the defendant as you're doing in this case pro bono. But I think we're ready to consider this matter and we will get back to you in the following weeks with our decision. Thanks for the briefs. Very well done. Thank you for the arguments. Very well and professionally presented. Have a good day.